*This opinion will be unpublished and may not be cited except as provided by Minn. Stat. § 480A.08, subd. 3 (2012).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A14-0759**

State of Minnesota,
Appellant,

vs.

Sarah May Mickalsen,
Respondent.

**Filed November 24, 2014
Reversed and remanded
Rodenberg, Judge**

Dakota County District Court
File No. 19AV-CR-12-12961

Lori Swanson, Attorney General, St. Paul, Minnesota; and

Alina Schwartz, Campbell Knutson, Eagan, Minnesota (for appellant)

Jeffrey B. Ring, Minneapolis, Minnesota (for respondent)

Considered and decided by Rodenberg, Presiding Judge; Worke, Judge; and Kirk, Judge.

**U N P U B L I S H E D   O P I N I O N**

**RODENBERG**, Judge

Appellant State of Minnesota challenges the district court's grant of respondent Sarah May Mickalsen's motion to suppress and its derivative order dismissing one count

of the driving-while-impaired complaint, arguing that respondent voluntarily consented to the breath test. We reverse and remand for further proceedings.

**FACTS**

Respondent is charged with fourth-degree driving while impaired (DWI) in violation of Minn. Stat § 169A.27, subd. 1 (2012), and with an alcohol concentration of .08 or more in violation of Minn. Stat. § 169A.20, subd. 1(5) (2012). In a pretrial motion to suppress, respondent argued that the results of her breath test should be suppressed because the state violated her right to counsel and her right to be free of unreasonable searches and seizures. After a contested hearing, the district court ruled that respondent was denied her right to counsel and granted the motion to suppress the results of the breath test on those grounds alone. The state appealed. On appeal, we reversed the district court, holding that respondent's right to counsel was not violated because "no *fair trial* right . . . would be impeded by the officer's refusing to disclose the preliminary breath test result before [respondent] was even charged with a crime." We reversed, and further proceedings were held in the district court.[1]

Because the district court had not addressed the *McNeely/Brooks* issues raised by respondent in her motion to suppress, respondent then requested that the district court hear and determine her alternative motion alleging an unlawful search. *See State v. Brooks*, 838 N.W.2d 563, 568-69 (Minn. 2013) (holding that chemical test under Minnesota Implied Consent Law is a search). The district court concluded that

---

[1] The facts of the case are set forth in our earlier opinion, *State v. Mickalsen*, No. A13-1244, 2013 WL 6839926 at *1 (Minn. App. Dec. 30, 2013).

respondent was unlike the defendant in *Brooks* because respondent has not been previously arrested for a DWI. Further, unlike the defendant in *Brooks*, the district court held that the state put forth no evidence indicating that respondent had "significant prior contacts with law enforcement," concluding that respondent "was confused by the process." Based on these findings, the district court held that the "state has made an insufficient case to establish [that respondent] knowingly and voluntarily consented to the search and waived the requirement under the Fourth Amendment for . . . a warrant." This appeal followed.

## D E C I S I O N

The evidentiary record is limited to the police report of July 16, 2012. There was no testimony at the motion hearing. According to the report, Lakeville Police Officer A.P. Stier stopped respondent after he observed illegal driving conduct. Officer Stier approached the driver, later identified as respondent, and detected a strong odor of alcohol. Respondent denied having consumed alcohol, but Officer Stier observed that her eyes were bloodshot and watery and that her speech was slurred. Based on these observations, respondent's performance of field sobriety tests, and a Preliminary Breath Test (PBT) with a reading of .178, Officer Stier arrested respondent.

At the police department, Officer Stier read respondent the Minnesota Implied Consent Advisory. Respondent thought she had already taken the breath test. Officer Stier explained that the breath test done before her arrest was merely preliminary and that the breath test to be conducted in the police department was for evidentiary purposes. Respondent prematurely expressed a refusal to take the test. However, Officer Stier told

3

her "we're not quite to that part." He asked her if she wanted to consult with an attorney. Respondent confirmed that she did. Officer Stier allowed her to use her personal cell phone to contact her boyfriend in order to obtain the phone number for an attorney. During respondent's conversation with her boyfriend, respondent stated that she did not want to take the test. She then spoke with an attorney and ultimately agreed to provide a breath test. Respondent also indicated that she was satisfied with the advice she received from the attorney and both agreed to the breath testing and requested that a second breath test be administered. Officer Stier complied with that request. Both tests resulted in a reported .17 alcohol concentration.

In a pretrial appeal, the state must show clearly and unequivocally that the district court erred and that the error will have a critical impact on the outcome of the trial. *State v. Kim*, 398 N.W.2d 544, 547 (Minn. 1987). There is a critical impact where the pretrial order "seriously impede[s] . . . continuation of the prosecution." *Id.* at 551 (quotation omitted). As the pretrial order here dismisses one of the counts against respondent, and suppresses evidence relevant to both counts, the pretrial order seriously impedes the continuation of the prosecution and therefore will have a critical impact on the outcome of the trial. Thus, the state has met its threshold burden.

When deciding whether the district court erred in its pretrial order, we "independently review the facts and determine, as a matter of law, whether the district court erred." *State v. Baxter*, 686 N.W.2d 846, 851 (Minn. App. 2004). Ordinarily we give great deference to the district court's factual determinations. However, the district court here made no credibility determinations. Respondent did not appear or testify at the

4

motion hearing. The evidentiary record is limited to the officer's police report, and there is no conflicting evidence to be considered.

The Fourth Amendment to the United States Constitution and Article I, Section 10 of the Minnesota Constitution protect persons from unreasonable searches and seizures. U.S. Const. amend. IV; Minn. Const. art. 1, § 10.[2] Generally, a search conducted without a warrant is per se unconstitutional. *State v. Dezso*, 512 N.W.2d 877, 880 (Minn. 1994). A breath test constitutes a search. *Skinner v. Ry. Labor Execs. Ass'n*, 489 U.S. 602, 617, 109 S. Ct. 1402, 1413 (1989). Consent is an exception to the warrant requirement. *Dezso*, 512 N.W.2d at 880. The state bears the burden of proving that the defendant consented to a search. *Id.* Whether the defendant consented to a search is determined by an examination of the totality of the circumstances. *Id.* These circumstances include "the nature of the encounter, the kind of person the defendant is, and what was said and how it was said." *Id.*

In *Brooks*, the supreme court considered "how the police came to suspect [the defendant] was driving under the influence, their request that he take the chemical tests . . . whether they read him the implied consent advisory, and whether he had the right to consult with an attorney" to analyze whether the "nature of the encounter" indicated voluntary consent to the tests. 838 N.W.2d at 569. The supreme court ultimately held that the driver in *Brooks* voluntarily consented to the breath test because the driver was

---

[2] The Minnesota Supreme Court has favorably cited federal caselaw when analyzing state constitutional issues of breath, blood, and urine tests under Minnesota's implied consent laws. *Brooks*, 838 N.W.2d at 568. The protections afforded by the state and federal constitutions are identical in this context.

neither "confronted with repeated police questioning" nor "coerced in the sense that his will had been overborne and his capacity for self-determination critically impaired." *Id.* at 571. "[N]or was he asked to consent after having spent days in custody." *Id.* In finding the driver's consent in *Brooks* to be voluntary, the supreme court also noted that he was given an option to consult with an attorney, and did so; he was read the implied consent advisory and informed of his options; and he was told that he could refuse to take the test. *Id.* at 571-72.

It is true, in this case, that there is no evidence that respondent had been previously arrested for a DWI or that respondent had any significant prior contacts with law enforcement, like that of the driver in *Brooks*. It is also true that, when Officer Stier read the implied consent advisory to respondent, respondent initially seemed confused about why Officer Stier requested a second breath test when she had been given a PBT when she was stopped.

But respondent was read the implied consent advisory, was told of her options, consulted an attorney of her own choosing before making her decision, and was satisfied with the advice of her attorney. After speaking with the attorney, respondent consented to a breath test. Then she also requested that a *second* breath test be taken. The undisputed facts here admit of no conclusion other than that, like the driver in *Brooks*, respondent voluntarily consented to supplying a sample of her breath for testing. Both respondent and the driver in *Brooks* were informed of their options under the implied consent law, both respondent and the driver in *Brooks* were allowed to contact an attorney, both respondent and the driver in *Brooks* consented to a chemical test. Neither

6

respondent nor the driver in *Brooks* were confronted with repeated police questioning or asked to consent only after spending a few days in custody. The district court erred by focusing on two relatively unimportant comparisons to Brooks, while failing to take into account the totality of the circumstances as required by *Brooks*.

Although respondent initially indicated a preference to refuse testing before she was even asked whether she agreed to testing, her apparent confusion was immediately and correctly resolved when Officer Stier explained the process and why a breath test was being administered at the police station after the earlier PBT. Before she consented to the breath test, respondent had conferred with counsel. The *Brooks* court found that consulting with counsel "supports the conclusion that a defendant made a voluntary decision." 838 N.W.2d at 572. The record establishes that respondent was no longer confused after this explanation.

The evidence in the record in this case supports no finding other than that the nature-of-the-encounter consideration under *Deszo* weighs in favor of finding that respondent voluntarily consented to testing. The district court unequivocally erred in concluding otherwise.

The district court appears not to have addressed the kind of person respondent is, other than to observe that there was no evidence that respondent had been arrested for a DWI and no evidence that respondent had prior significant contact with law enforcement. The record is replete with information about what kind of person respondent is in this case. Exhibit 1 identifies respondent as a physical therapist and that she is clearly of sufficient intelligence to understand her options and make decisions. The exhibit also

7

indicates that respondent was cooperative and understood, after explanation, the implied consent process. These facts support no conclusion other than that respondent is the kind of person to understand the consequences of the decision she was asked to make.

The district court did not appear to address what was said and how it was said, another factor required to be addressed by the *Brooks* analysis. Exhibit 1 shows the encounter to have been professional and accommodating. Officer Stier allowed respondent to not only contact an attorney, but also to have a long phone conversation seeking advice from her boyfriend. Further, Officer Stier explained the procedure thoroughly and accurately ensured that respondent understood the procedure at every point. The district court unequivocally erred in not considering this evidence.

Under *Brooks*, the totality of the circumstances admits of no conclusion other than that respondent voluntarily consented to breath testing. The district court unequivocally erred in suppressing the breath test results.

Finally, respondent claims that Minnesota's implied consent law is unconstitutional. Under the Minnesota implied consent law, all drivers in the state of Minnesota impliedly consent to a chemical test of blood, breath, or urine as evidence of whether the driver is under the influence of alcohol. Minn. Stat. §169A.51, subd. 1(b)(1) (2012). An officer may request a chemical test be administered when an officer has probable cause to believe a driver is impaired and the driver has been arrested for DWI. *Id.* (among other scenarios listed in the statute). Refusal to consent to a chemical test is a crime. Minn. Stat. §169A.52, subd. 1 (2012). "Although refusing the test comes with criminal penalties . . . the supreme court has made [it] clear that while the choice to

8

submit or refuse to take the chemical test 'will not be an easy or pleasant one for a suspect to make,' the criminal process 'often requires suspects and defendants to make difficult choices.'" *Brooks*, 838 N.W.2d at 571 (citing *South Dakota v. Neville*, 459 U.S. 553, 564, 103 S. Ct. 916, 923 (1983)). The fact that refusal is a crime does not render the Minnesota implied consent law unconstitutional and does not invalidate otherwise valid consent. *Id.* at 572-73; *see also Stevens v. Comm'r of Pub. Safety*, 850 N.W.2d 717, 722-731 (Minn. App. 2014) (holding that Minnesota Implied Consent Law does not violate the unconstitutional-conditions doctrine).

In sum, we reverse the district court's grant of respondent's motion to suppress because the record admits of no conclusion other than that respondent voluntarily consented to chemical testing of her breath. We also reverse the district court's grant of respondent's derivative motion to dismiss the count of driving with an alcohol concentration of .08 or more. We remand for further proceedings.

**Reversed and remanded.**